IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GEORGE HALDES, | ) | Case No. 12-20050 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |

**ORDER ON DEBTOR'S MOTION FOR (A) ENTRY OF AN ORDER,
PURSUANT TO 11 U.S.C. §§363 AND 1123(a)(5)(D) AND FED. R. BANKR. P.
2002 AND 6004: (i) APPROVING BID PROCEDURES FOR THE SALE OF
THE DEBTOR'S PROPERTY, (ii) APPROVING NOTICE PROCEDURES
REGARDING THE PROPOSED SALE, (iii) SCHEDULING A HEARING
DATE TO CONSIDER THE SALE, (iv) IDENTIFYING URBAN
PARTNERSHIP BANK AS THE STALKING HORSE BIDDER; AND (B)
ENTRY OF AN ORDER AFTER THE SALE HEARING, PURSUANT TO 11
U.S.C. §363 AND FED. R. BANKR. P. 6004 AND 6006: (i) AUTHORIZING
THE DEBTOR TO SELL THE PROPERTY
AND (ii) GRANTING RELATED RELIEF**

This matter having come before the Court on the Motion of George Haldes,

debtor and debtor in possession ("Haldes" or the "Debtor") seeking entry of an order

(A) Pursuant to 11 U.S.C. §§363 and 1123(A)(5)(D) and Fed. R. Bankr. P. 2002 and

6004 (i) Approving Bid Procedures for the Sale of the Debtor's Property, (ii)

Approving Notice Procedures Regarding the Proposed Sale, (iii) Scheduling a

Hearing Date to Consider the Sale, (iv) Identifying Urban Partnership Bank as the

Stalking Horse Bidder; and (B) Entry of an Order After the Sale Hearing, Pursuant

to 11 U.S.C. §363 and Fed. R. Bankr. P. 6004 and 6006 (i) Authorizing the Debtor to

Sell the Property and (ii) Granting Related Relief (the "Motion"); the Court having

reviewed the Motion and the Court determined that the relief requested in the

Motion is in the best interests of the Debtor, his estates, his creditors and other

parties-in-interest; it appearing that notice of the Motion was good and sufficient

under the particular circumstances and that no other due deliberation thereon is necessary; and good and sufficient cause appearing therefore, IT IS HEREBY FOUND THAT:

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are 11 U.S.C. §§ 363 and 1123(a)(5)(D) and Fed. R. Bankr. P. 2002 and 6004. Venue of the Debtor's chapter 11 case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    The Debtor has articulated good and sufficient reasons for approving (1) the bid procedures attached hereto as **Exhibit 1** (the "Bid Procedures") for the sale of the Property located at 5114 N. Kenmore, Unit 1S, Chicago, Illinois 60640, and (2) the form and manner of notice of the Bid Procedures and the Sale.

C.    The Bid Procedures are reasonable and appropriate.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.    The Bid Procedures attached hereto as **Exhibit 1** are approved and fully incorporated into this Order. The Debtor is authorized and directed to act in accordance therewith.

2.    Within five (5) business days after the entry of this Order, or as soon thereafter as practicable (the "Notice Date"), the Debtor shall serve a copy of this Order and the Bid Procedures upon (a) all entities known to have expressed an interest in the Property; (b) all entities known to have asserted any lien, claim,

2

interest or encumbrance in or upon the Property; (c) the Office of the United States
Trustee; (d) all creditors listed in the Debtor's Schedules; and (e) those parties who
have requested notice pursuant to Fed. R. Bankr. P. 2002. Such notice shall be
sufficient and proper notice of the sale with respect to interested parties.

3.     The form of sale agreement attached hereto as **Exhibit 2**, or a
substantially similar form (the "Sale Agreement"), is approved for the sale of the
Property.

4.     An auction at which time only Qualified Bidders that have submitted
Qualified Bids are eligible to participate (the "Auction") shall be conducted at **10:30
a.m.** prevailing Central time on **February 19 , 2013** at Bauch & Michaels, LLC, 53
West Jackson Blvd., Suite 1115, Chicago, Illinois 60604.

5.     Objections to all relief requested in the Sale Motion must be in writing
and filed and served so as to be actually received by counsel for the Debtor, Bauch &
Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604, Attn:
Paul M. Bauch, Esq., by **February 21, 2013**.

6.     A final hearing to determine the Winning Bidder and to approve the
sale of the Property to the Winning Bidder pursuant to a Sale Agreement shall be
held **on February 26, 2013 at 10:00 a.m.** (prevailing Central time) in courtroom
615 at the United States Bankruptcy Court for the Northern District of Illinois,
Eastern Division, 219 South Dearborn St., Chicago, Illinois.

7.     This Order shall constitute findings of fact and conclusions of law and
shall take effect immediately upon execution hereof.

3

8.    Notwithstanding the possible applicability of Fed. R. Bankr. P. 6004(g), 6006(d), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.    This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

ENTERED:

E 8 JAN 2013

Hon. Janet S. Baer
United States Bankruptcy Judge

Prepared by counsel for Movant:

Paul M. Bauch (ARDC #6196619)
Carolina Y. Sales (ARDC #6287277)
BAUCH & MICHAELS, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: (312) 427-5709

4

## EXHIBIT 1 – BID PROCEDURES

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GEORGE HALDES, | ) | Case No. 12-20050 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |

## BID PROCEDURES

Set forth below are the bid procedures (the "Bid Procedures") to be employed with respect to the proposed disposition of the real property located at 5114 N. Kenmore Unit, 1S, Chicago, Illinois 60640 (the "Property").

### Sale Motion

On November 16, 2012, George Haldes, debtor and debtor in possession ("Haldes" or the "Debtor"), filed a motion (the "Sale Motion") for orders: (A)(i) approving the Bid Procedures to be employed in connection with the proposed sale (the "Sale") of the Property, (ii) scheduling the Auction and hearing to consider approval of (a) the Sale, and (b) certain related relief, and (iii) approving the notice of the respective dates, times and places for the Auction and the Sale Hearing and (B)(i) authorizing and approving the sale agreements, in substantially the same form attached as Exhibit 2 to the Bid Procedures Order (as defined below) (the "Sale Agreements"), between the Debtor and the Winning Bidder (as defined herein), (ii) authorizing the Sale of the Property free and clear of all liens, claims, encumbrances and other interests, (iii) authorizing the Debtor to consummate all transactions related to the above, including the payment of the allowed claims of Urban Partnership Bank, the mortgagee of the Property, and First Kenmore Condominium Association, the condominium association for the Property (iv) granting other relief, filed in the United States Bankruptcy Court for the Northern District of Illinois (the "Bankruptcy Court").

These Bid Procedures were approved and authorized by a Bankruptcy Court order (the "Bid Procedures Order") in the Chapter 11 case of the Debtor, which was commenced on May 16, 2012 (the "Bankruptcy Case").

### The Bidding Process

The Debtor and his advisors shall (a) determine whether any person is a Qualified Bidder (hereinafter defined) and (b) receive offers from Qualified Bidders (collectively, the "Bidding Process"). Any person that wishes to participate in the Bidding Process or the sale of the Property must be a Qualified Bidder. Neither the Debtor nor his representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Qualified Bidder.

## Participation Requirements

Any person that wishes to participate in the Bidding Process or the sale of the Property (a "Potential Bidder") must become a "Qualified Bidder." Unless otherwise ordered by the Bankruptcy Court, for cause shown, or as otherwise determined by the Debtor, each Potential Bidder must deliver (unless previously delivered) to the Debtor, not later than **February 15, 2012**:

(i) An Executed Sale Agreement, which shall not contain any contingencies or conditions to closing relating to financing and

(ii) A good faith deposit (the "Deposit") in the form of good and immediately available funds in the amount equal to the greater of (a) $25,000, or (b) 5% of the proposed purchase price.

A Qualified Bidder is a Potential Bidder that delivers the items described in subparagraphs (i)-(ii) above. A bid received from a Qualified Bidder that includes all of the above required bid documents and meets all of the above requirements is a "Qualified Bidder."

## Due Diligence

The Debtor shall afford any Potential Bidder the time and opportunity to conduct reasonable due diligence. The Debtor will coordinate all reasonable requests for additional information and due diligence access from such Potential Bidders. The Debtor shall not be obligated to furnish any due diligence information after the Bidding Deadline (as hereinafter defined). Neither the Debtor nor any of his representatives are obligated to furnish any information to any person other than a Potential Bidder. The Debtor is not responsible for, and will bear no liability with respect to, any information obtained by bidders in connection with the sale of the Property.

Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Property prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Property in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Property, or the completeness of any information provided in connection therewith or the Auction (as defined herein), except, as to the Winning Bidder (as defined herein), as expressly stated in the definitive Sale Agreements with such Winning Bidder.

2

### "As Is, Where Is"

The sale of the Property shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor or his estate, except, with respect to a Qualified Bidder, to the extent set forth in the definitive Sale Agreement.   The Property is currently subject to an Order of Possession in favor of the First Kenmore Condominium Association. The First Kenmore Condominium Association has filed a secured claim in the amount of $12,359.35, plus "additional attorneys' fees to be awarded."   First Kenmore Condominium Association alleges that as of November 30, 2012, exclusive of statutory interest, its claim totals $18,489.31. First Kenmore Condominium Association contends that it's order of possession remains in effect until such time as its claim for past and current assessments is paid in full. Debtor contends that the Property may be sold free and clear of First Kenmore Condominium Association's possessory interest in the Property, provided that the Bankrutpcy Court finds that such interest is adequately protected under the sale procedures.

### Urban Partnership Bank Stalking Horse Bid

Urban Partnership Bank ("Urban") is designated as the stalking horse bidder pursuant to its offer to purchase the Property for $250,000 pursuant to a credit bid. Notwithstanding anything to the contrary herein, Urban is a Qualified Bidder. Urban shall submit the stalking horse bid and may increase such credit bid up to the amount of its Allowed Secured Claim. Urban's credit bid may be made without the necessity of making a Deposit, and such credit bid will be deemed a Qualified Bid. In the event that Urban is the Winning Bidder, Urban shall pay all expenses relating to the sale of the Property that may be recovered pursuant to Section 506(c) of the Bankruptcy Code, and the Debtor shall transfer the Property to Urban, subject to all lien claims of record that are senior to Urban's mortgage and all accrued real estate taxes and all claims and interests of the First Kenmore Condominium Association

### Bid Deadline

A Qualified Bidder that desires to make a bid shall deliver written copies of its bid to (i) Bauch & Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604, Attn: Paul M. Bauch., Facsimile: (312) 427-5709, not later than 4:00 p.m. (prevailing Central time) on **February 15, 2013** (the "Bid Deadline"). The Debtor may extend the Bid Deadline once or successively, but he is not obligated to do so. If the Debtor extends the Bid Deadline, he shall promptly notify all Qualified Bidders of such extension.

The Debtor reserves the right to determine the value of any Qualified Bid (either by itself or in connection with one or more other Qualified Bids), and which Qualified Bid(s) constitute the highest, best and otherwise financially superior offer.

3

## Auction

If the Debtor receives at least two Qualified Bids, then the Debtor shall conduct an auction (the "Auction") with respect to the Property and shall provide all Qualified Bidders the opportunity to participate in the Auction. The Auction shall commence at **10:30 a.m. prevailing Central time on February 19, 2013** at Bauch & Michaels, LLC, 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604. This date shall not be extended without the consent of Debtor.

Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate at the Auction. During the Auction, bidding shall begin initially with the highest or otherwise best Qualified Bid as announced by the Debtor, and subsequently continue in minimum increments of at least $5,000.00; provided however, that if there are only two (2) Qualified Bidders remaining, the Debtor may, in his sole discretion, decrease the minimum increments to $1,000. Other than as otherwise set forth herein, the Debtor may conduct the Auction in the manner he determines in the exercise of his reasonable business judgment will result in the highest, best or otherwise financially superior offer(s) for the Property, and may continue the Auction if he determines that such continuance is in the best interests of the bankruptcy estate.

Upon conclusion of the bidding, the Auction may be closed, and the Debtor shall (i) immediately review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the proposed transaction, and (ii) within two (2) business days identify the highest, best or otherwise financially superior offer(s) for the Property (the "Winning Bid") and the entity or entities submitting such Winning Bid, the "Winning Bidder"), which highest, best or otherwise financially superior offer will provide the greatest amount of net value to the Debtor, and advise the Qualified Bidders of such determination.

## Acceptance of Qualified Bids

The Debtor may sell the Property to the Winning Bidder upon the approval of the Winning Bid(s) by the Bankruptcy Court after the Sale Hearing (defined below). The Debtor's presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtor's acceptance of the bid. The Debtor will be deemed to have accepted a bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing (as defined herein). The Winning Bidder's Winning Bid shall be deemed an irrevocable offer and shall remain subject to acceptance by the Debtor until the Bankruptcy Court concludes the Sale Hearing and denies approval of the Winning Bid.

4

## Objections

Objections to all relief requested in the Sale Motion must be in writing and filed and served so as to be actually received by counsel for the Debtor, Bauch & Michaels, LLC 53 West Jackson Blvd., Suite 1115, Chicago, Illinois 60604, Attn: Paul M. Bauch, Esq., by **February 21, 2013**.

## Sale Hearing

A hearing on all the remaining relief requested in the Sale Motion and to consider the results of the Auction (the "Sale Hearing") will be held before the Honorable Janet S. Baer, United States Bankruptcy Judge, in courtroom 615 at the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, on or about **February 26, 2013 at 10:00 a.m.** (the "Sale Hearing Date"). The Sale will be subject to the entry of an order of the Bankruptcy Court approving same.

At the Sale Hearing, the Debtor will seek entry of an order, among other things, authorizing and approving the disposition of the Property to the Winning Bidder, pursuant to the terms and conditions set forth in the Sale Agreement submitted by such Winning Bidder. The Sale Hearing may be adjourned or rescheduled by the Debtor without notice other than by an announcement of the adjourned date at the Sale Hearing. **In the event that a third party other than Urban is the Winning Bidder, the cooperating broker, if any, shall receive a commission equal to 2.5% of the Winning Bid.**

If the Property is sold to the Winning Bidder after an Auction, following the approval of the sale of the Property to the Winning Bidder at the Sale hearing, if such Winning Bidder fails to consummate an approved sale by March 30, 2013 the next highest or otherwise best Qualified Bid, as disclosed at the Sale Hearing, shall be deemed to be the Winning Bid and the Debtor shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting such bid without further order of the Bankruptcy Court.

## Return of Good Faith Deposit

The Good Faith Deposit of the Winning Bidder shall be applied to the purchase price of such transaction at closing. The Good Faith Deposits of all other Qualified Bidders shall be held until the earlier of (i) two (2) business days after the Property has been sold pursuant to the closing of a sale approved by the Bankruptcy Court, and (ii) 45 days after the conclusion of the Sale Hearing. If a Winning Bidder fails to consummate an approved sale because of a breach or failure to perform on the part of such Winning Bidder, the Debtor shall be entitled to retain the Good Faith Deposit as part of his damages resulting from the breach or failure to perform by the Winning Bidder.

## Modifications

The Debtor may (a) determine which Qualified Bid, if any, is the highest, best or otherwise financially superior offer, and (b) reject, at any time before entry of an order of the Bankruptcy Court approving a Qualified Bid, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtor, his estate and creditors.

EXHIBIT 2 – FORM OF ASSET PURCHASE AGREEMENT

## SALE AGREEMENT

This Sale Agreement ("**Sale Agreement**") is made and entered into as of _____, 2013, by and among _____ ("**Buyer**") and Sharon Haldes, an individual, and George Haldes, debtor-in-possession (collectively, "**Sellers**"). Buyer and Sellers may be individually referred to as a "**Party**" and collectively as the "**Parties.**"

### R E C I T A L S

      A.     Sellers own a condominium unit, and as a result thereof an undivided percentage ownership interest as tenants-in-common of certain condominium property (the condominium unit and percentage ownership in land and common elements of improvements constitute the "**Real Property**") located at the commonly known address of 5114 North Kenmore Avenue, Unit 5114-1 (also known as Unit 1S), Chicago, Illinois. This property identification number (PIN) for this condominium unit is 14-08-401-017-1001. The legal description shall be provided upon receipt and attached hereto as **Exhibit A – Legal Description**. The sale of Real Property contemplated herein includes any and all improvements upon the Real Property. No personal property is included in the sale. The Real Property is subject to the Illinois Condominium Property Act ("Condominium Property Act"), 765 ILCS 605/1 *et seq.*

      B.     One of the Sellers, George Haldes, is a debtor-in-possession under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.,* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "**Bankruptcy Court**"), administered as case number 12-20050 (the "**Bankruptcy Case**").

      C.     This Agreement has been prepared in conformity with an expected order from the Bankruptcy Court approving pursuant to §363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 2002 and 6004 the bid procedures for the sale of the Real Property (the "**Bid Procedures Order**"). Upon entry of this order in the Bankruptcy Case the terms and conditions of the order shall be incorporated herein and made a part hereof by this reference. A copy of the order shall be attached to this Sale Agreement as **Exhibit B – Bid Procedures Order.** Any and all provisions in this Sale Agreement must be interpreted congruent with any and all provisions of the Bid Procedures Order and to the extent that either is in conflict, the Bid Procedures Order shall control and govern over this Sale Agreement.

### A G R E E M E N T

     In consideration of the foregoing Recitals, which are hereby expressly incorporated into and made a part of this Sale Agreement, and in consideration of the respective representations, warranties, covenants, agreements and conditions hereafter set forth, the receipt and sufficiency of which is hereby acknowledged and accepted, the Parties agree as follows:

2

## ARTICLE 1
## PURCHASE AND SALE OF THE PROPERTY

1.1     The Real Property.  On the terms and subject to the conditions contained in this Agreement, on the Closing Date (as defined in paragraph 4.1 below), Sellers shall sell, grant and warrant, convey, assign, transfer and deliver to Buyer, or shall cause to be sold, granted and warranted, conveyed, assigned, transferred and delivered to Buyer, and Buyer shall purchase, acquire and accept from Sellers in fee simple title to the Real Property, including all appurtenances thereto free and clear of all mortgages, security interests, liens, interests, except for the Permitted Exceptions to title as set forth in paragraph 4.4 below.

1.2     Excluded Assets.  Sellers will not sell, transfer or assign any of the following assets (the "**Excluded Assets**"):

(a)     Any accounts receivable, cash and cash equivalents;

(b)     Records relating to all federal, state, local, and foreign taxes and all claims and rights to refunds and credits with respect thereto.

1.3     Excluded Liabilities.  Buyer shall not assume any liabilities of Sellers whatsoever, except for (a) obligations for accrued property taxes not paid or not yet due and payable; (b) for super-priority or other condominium assessments which may be asserted against the Buyer (or Buyer's subsequent purchaser if Buyer is a banking institution) as provided in subsections 9(g)(1), (3) or (4) of the Condominium Property Act; and (c) any municipal charge, including but not limited to existent water bills, which are required to be paid as a condition to recording a deed in Cook County, Illinois.

## ARTICLE 2
## PURCHASE PRICE

2.1     Amount of Purchase Price.  Urban Partnership Bank ("**Urban**") has made an initial credit bid of $250,000.00 for the Real Property. Pursuant to the Bid Procedures Order, a broker's commission of 2.5% shall be added to the High Bid Price, which amount is a commission to any cooperating broker involved in this transaction. If the High Bid Price is composed in part as a credit bid and cash bid from Urban then the broker's commission is 0.0% on the credit bid portion and 2.5% on the cash bid portion of the High Bid Price. The Purchase Price set forth herein does not include any closing costs or Section 506(c) Expenses that Buyer must pay at closing. (See paragraph 4.5 below.) The Buyer agrees to pay Sellers the aggregate amount (the "**Purchase Price**") of the High Bid Price and broker's commission for the Real Property in the amount of:

| | |
|---|---|
| Credit Bid | $ |
| Cash Bid | |
| High Bid Price | $ |
| Broker's Commission: | |
| Total Purchase Price and Commission | $ |

3

2.2    Payment of Purchase Price.  The Purchase Price and shall be paid by wire transfer of funds prior to and at closing of the transaction contemplated herein without any allocation for any personal property and included with the conveyance of the Real Property and shall be paid as follows:

(a)    A deposit shall be paid pursuant to the Bid Procedures Order to become a Qualified Bidder, which is to be held in the Sellers' Sale Escrow at Chicago Title Insurance Company ("**Chicago Title**"), as escrow agent, and shall be applied to the Purchase Price at the time of the Closing. It is understood and agreed that Chicago Title's sole duties as escrowee shall be as set forth in the *Sale Escrow Trust Instructions*; and,

(b)    The balance of the Purchase Price must be paid by wire transfer at the Closing. No prorations shall be made for any purpose, including, but not limited to property taxes or condominium assessments.

ARTICLE 3
DUE DILIGENCE PERIOD

3.1    Buyer waives any rights to conduct further due diligence as a condition to consummating this Agreement. Buyer acknowledges that Buyer has been provided time and an opportunity to conduct due diligence prior to entering into this Agreement.

ARTICLE 4
CLOSING

4.1    Time and Place of the Closing.  The closing of the purchase and sale of the Real Property (the "**Closing**") shall take place at the offices of Chicago Title, 10 South LaSalle Street, Suite 3100, Chicago, Illinois, by no later than March 30, 2013 (the "**Closing Date**"), unless the Closing Date is extended by agreement of both the Buyer and Sellers or order of the Bankruptcy Court.

4.2    Deliveries by Sellers.  At the Closing, Sellers shall deliver or cause to be delivered to Buyer the following duly executed documents:

(a)    Special warranty deeds (or Trustee deed's comparably in the nature of warranty deeds) from the Sellers to Buyer for each parcel of Real Property, subject only to the Permitted Exceptions (as defined below).

(b)    Owners' Affidavits and ALTA statements regarding mechanic's liens and parties in possession, executed by Sellers in form and substance reasonably satisfactory to the Title Company.

(c)    A "non-foreign" certificate signed by Sellers pursuant to Treasury Regulations or other evidence that Seller is not a "foreign person" within the meaning of Internal Revenue Code Section 1445;

4

(d)    A copy of the Bankruptcy Court's order approving this Agreement and the sale of the Real Property.

(e)    Bills of sale and such other instruments, to the extent necessary, to be effective on the Closing Date, for all personal property as shall be sufficient to convey to Buyer all Sellers' rights, title and interest in and to the personal property, free and clear of all liens, claims and encumbrances.

(f)    Evidence, in such form as in each case as is reasonably satisfactory to Buyer, that each of the conditions to the obligation of Buyer to purchase the Property from Seller set forth in Article 9 of this Agreement have been satisfied.

(g)    Any and all required real property transfer declarations and, if required, consents from respective Governmental Entities to the transfer of any parcel of the Real Property.

(h)    All other documents, instruments and writings reasonably required to be delivered by Seller at or prior to the Closing pursuant to this Agreement or otherwise required in connection herewith.

4.3    Deliveries by Buyer. At the Closing, Buyer shall deliver or cause to be delivered to Seller the following:

(a)    Copies of (i) Buyer's articles of organization, (ii) Buyer's resolution authorizing the execution, delivery, performance and consummation of the transaction described herein certified by an authorized representative of the Buyer, (iii) an incumbency certificate executed by the Buyer's manager, (iv) Buyer's signed ALTA statement, and (v) any other document reasonably requested by Sellers to be produced or executed at Closing.

(b)    The remaining amount of the Purchase Price, and all closing costs, including, but not limited to, 506(c) Expenses and costs for redeeming the Real Property from any prior tax sale, and other amounts due pursuant to this Agreement, the Bid Procedures Order, and any other applicable Order of the Bankruptcy Court, less the earnest money deposit.

4.4    Permitted Exceptions and Title. Sellers agree to deliver to Buyer title to the Real Property by special warranty or trustee deeds, subject to the following (collectively referred to as the "**Permitted Exceptions**"): (1) any accrued property taxes and property taxes not yet due and payable and for all years thereafter; (2) covenants, conditions, restrictions and building lines then of record; (3) easements or encroachments existing or of record; (4) acts done or suffered by Buyer; (5) any special service area, village comprehensive plans or TIFF ordinances of record; (6) any recorded planned unit development agreements or property management agreements or declarations of record; any (7) any and all municipal notices of violation of zoning or building code ordinances.

5

4.5   Closing Costs.   In addition to the Purchase Price and broker's commission (if applicable), Buyer shall pay (a) the State of Illinois and Cook County transfer taxes and any applicable municipal transfer taxes or fees, notwithstanding any ordinance or statute providing otherwise; (b) title insurance policies charges and fees from Chicago Title for owner's and any lender's policies and any special endorsements requested by Buyer thereto; (d)  all closing escrow charges or fees; (e), any Section 506(c) Expenses as provided by the Bankruptcy Court, including, but not limited to any amounts of Sellers' professional fees, but in no event more than such amounts scheduled in the 506(c) budget filed with the Bankruptcy Court prior to the Auction as such term is defined in the Bid Procedures Order.

ARTICLE 5
REPRESENTATIONS AND WARRANTIES OF SELLER

In order to induce Buyer to enter into this Agreement and to consummate the transactions contemplated hereunder, Sellers make the following representations and warranties, which shall be reaffirmed by act of Closing the transaction contemplated herein.

5.1   Authority; Enforceability.   Sellers have full power and authority pursuant to the Bankruptcy Code and orders of the Bankruptcy Court in the Bankruptcy Case to enter into and consummate the transaction, promises, and covenants contemplated hereby. This Agreement and all other instruments or documents which Sellers execute and deliver to Buyer pursuant to this Agreement, have been duly executed and delivered by Sellers and constitute the legal, valid and binding obligations of Sellers, enforceable in accordance with their respective terms, except as bankruptcy, insolvency, similar laws which affect creditors' rights or general equity principles may limit such enforceability.

5.2   Environmental, Health, and Safety Matters.   Sellers disclaim and make no representation or warranty regarding whether there has been compliance in all material respects with applicable Environmental Laws (as defined below), or whether the Real Property has been managed or operated in compliance in all material respects with all applicable Environmental Laws and applicable environmental permits. As used herein, "**Environmental Law**" means any and all federal, state and local laws relating to the protection of health and the environment, worker health and safety, and/or governing the handling, use, generation, treatment, storage, transportation, disposal, manufacture, distribution, formulation, packaging, labeling, or release of hazardous substances, all as in effect from time to time; and any common law doctrine, including, but not limited to, negligence, nuisance, trespass, personal injury, or property damage related to or arising out of the presence, release, or exposure to a hazardous substance.

5.3   "AS IS" TRANSACTION.   BUYER HEREBY ACKNOWLEDGES AND AGREES THAT, NOTWITHSTANDING THE REPRESENTATIONS AND WARRANTIES EXPRESSLY PROVIDED IN THIS ARTICLE 5, THE CONSENT OF A PARTY TO THE CLOSING SHALL CONSTITUTE A WAIVER BY SUCH PARTY OF ANY CONDITIONS TO CLOSING NOT SATISFIED AS OF THE CLOSING DATE, AND FOLLOWING CLOSING SELLERS MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO (i) ANY MATTER RELATING TO THE REAL PROPERTY OR IMPROVEMENTS THEREUPON; (ii) THE PHYSICAL CONDITION OF

6

ANY PERSONAL PROPERTY OR FIXTURES SITUATED UPON THE REAL PROPERTY; (iii) THE ENVIRONMENTAL CONDITION OR ANY OTHER MATTER RELATING TO THE REAL PROPERTY OR IMPROVEMENTS; (iv) THE ZONING OF THE REAL PROPERTY; OR (v) THE VALUE OF THE REAL PROPERTY OR IMPROVEMENTS. WITHOUT IN ANY WAY LIMITING THE FOREGOING, SELLERS HEREBY DISCLAIM ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PERSONAL PROPERTY OR FIXTURES ASSIGNED OR TRANSFERRED PURSUANT TO THIS AGREEMENT. BUYER FURTHER ACKNOWLEDGES THAT BUYER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF THE REAL PROPERTY AS BUYER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE REAL PROPERTY, AND EXCEPT FOR ANY REPRESENTATIONS AND WARRANTIES EXPRESSLY SET FORTH IN THIS ARTICLE 5, BUYER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, UPON THE CLOSING DATE, BUYER WILL ACCEPT THE REAL PROPERTY AND IMPROVEMENTS AND PERSONAL PROPERTY AND FIXTURES THEREUPON, AT THE CLOSING, "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

ARTICLE 6

REPRESENTATIONS AND WARRANTIES OF BUYER

In order to induce Sellers to enter into this Agreement and consummate the transactions contemplated hereunder, Buyer makes the following representations and warranties:

6.1    Organization of Buyer.  Buyer is a _____ duly organized or incorporated and legally existing in good standing under the laws of the State of _____.

6.2    Authority; Enforceability.  Buyer has full power and authority to enter into this Agreement and to carry out the transaction, promises and covenants contemplated hereby. The Buyer's manager and members or directors and officers have approved and authorized Buyer's execution and delivery of this Agreement and the performance of all its obligations hereunder. This Agreement and all other instruments or documents which Buyer executes and delivers to Sellers pursuant to this Agreement, have been duly executed and delivered by Buyer and constitute legal, valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms, except as bankruptcy, insolvency, similar laws which affect creditors' rights or general equity principles may limit such enforceability.

6.3    Non-Contravention; Consents.  Neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby by Buyer will: (i) conflict with or violate any provision of the articles of organization or operating agreement of Buyer or of any decree or order of any court or administration or other Governmental Entity which is either applicable to, binding upon or enforceable against Buyer; or (ii) in any material respect, result in any breach of or default under any mortgage, contract, agreement, indenture, will, trust or other instrument which is either binding upon or enforceable against Buyer. Buyer

7

does not need to give notice to or obtain consent or approval from any Governmental Entity or any other person or entity in connection with either the execution and delivery of this Agreement or the consummation of the transactions contemplated hereby or incident hereto.

6.4    Disclosure.  No representation or warranty by Buyer in this Agreement or in any exhibit, schedule, written statement, certificate or other document delivered or to be delivered to Seller pursuant hereto or in connection with the transactions contemplated hereby contains any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements contained therein not misleading.

## ARTICLE 7
## PRE-CLOSING COVENANTS

The Parties agree as follows with respect to the period between the execution of this Agreement and the Closing, if any.

7.1    General.  Each of the Parties will use all reasonable efforts to take all action and to do all things necessary, proper, or advisable in order to consummate and make effective the transactions contemplated by this Agreement (including satisfaction, but not waiver, of the closing conditions set forth in Article 9).

7.2    Notice of Developments.  Each Party will give prompt written notice to the other Party of any material adverse development causing a breach of any of its own representations and warranties in Articles 5 and 6.  No disclosure by any Party pursuant to this paragraph 7.2, however, shall be deemed to amend or supplement the Schedules to this Agreement or to prevent or cure any misrepresentation, breach of warranty, or breach of covenant.

7.3    Brokers' Fees.    Other than as disclosed herein or as provided in the Bid Procedures Order relating to broker's commissions, neither Sellers nor Buyer has employed any broker, finder, investment banker, or other intermediary or incurred any liability for any investment banking fees, financial advisory fees, brokerage fees, finders' fees, or other similar fees in connection with this Agreement.

## ARTICLE 8
## POST-CLOSING COVENANTS

8.1    General.  In case at any time after the Closing any further action is necessary to carry out the purposes of this Agreement, each of the Parties will take such further necessary action (including the execution and delivery of such further instruments and documents) as any other Party reasonably may request, all at the sole cost and expense of the requesting Party.

## ARTICLE 9
## CONDITIONS TO THE OBLIGATION TO CLOSE

9.1    Conditions to Obligation of Buyer.  The following conditions shall be satisfied by Seller or waived by the Buyer as conditions precedent to the Buyer's obligation to consummate the transaction contemplated herein:

(a)    On or before March 1, 2013, the Bankruptcy Court shall have entered the an order in the Bankruptcy Case, authorizing the sale of the Real Property in whole or part and approving this Agreement under sections 105(a), 363 and 365 of the Bankruptcy Code, and as of the Closing Date such order shall be in full force and effect and shall not have been stayed, vacated or reversed.

(b)    The representations and warranties of Sellers set forth in Article 5 shall be true and correct at and as of the Closing Date in all material respects.

(c)    Sellers shall have performed and complied with all of its covenants hereunder in all material respects through the Closing.

(d)    Sellers shall have executed or delivered the documents set forth in paragraph 4.2 above, and the same shall be in full force and effect.

Buyer may waive any condition specified in this paragraph 9.1 if it executes a writing so stating at or prior to the Closing.

9.2    Conditions to Obligation of Sellers.  The obligation of Sellers to consummate the transaction to be performed by them in connection with the Closing is subject to satisfaction of the following conditions:

(a)    On or before March 1, 2013, the Bankruptcy Court shall have entered the an order in the Bankruptcy Case, authorizing the sale of the Real Property in whole or part and approving this Agreement under sections 105(a), 363 and 365 of the Bankruptcy Code, and as of the Closing Date such order shall be in full force and effect and shall not have been stayed, vacated or reversed.

(b)    The representations and warranties of Buyer set forth in Article 6 shall be true and correct at and as of the Closing Date in all material respects.

(c)    Buyer shall have performed and complied with all of its covenants hereunder in all material respects through the Closing.

(d)    Buyer shall have executed and/or delivered the documents set forth in paragraph 4.3 above, and the same shall be in full force and effect.

Sellers may waive any condition specified in this paragraph 9.2 if Sellers execute a writing so stating at or prior to the Closing.

ARTICLE 10
TERMINATION

10.1    Termination or Default.  This Agreement may be terminated at any time prior to the Closing:

(a)    By the mutual written consent of Buyer and Sellers;

9

(b)  By Sellers in writing, if Buyer shall materially breach any of its representations, warranties or covenants contained in this Agreement, without liability of Seller on account of such termination (provided Sellers are not otherwise in material breach or default of this Agreement);

(c)  By Buyer in writing, if Sellers shall materially breach any of their respective representations, warranties or covenants contained in this Agreement, without liability of Buyer on account of such termination (provided Buyer is not otherwise in material breach or default of this Agreement); and

(d)  By either Buyer or Sellers in the event that the Closing shall not have occurred by February 15, 2013 due to any of the conditions to the performance of the obligation of the Party giving such notice not having been fulfilled and not having been waived by the Party giving such notice (provided that the terminating party is not then in material breach or default of this Agreement).

10.2  Effect of Termination or Default.  (a) Unless otherwise provided for herein, if Buyer fails to comply with the terms and conditions hereof, Seller may terminate this Agreement, in which event the total amount deposited or to be deposited by the Buyer shall be forfeited to Seller as its liquidated damages. Buyer shall be liable for payment of the total amount required to be deposited pursuant to the Bid Procedures Order and this Agreement, if not previously paid. The parties agree that actual damages in the event of default are difficult to ascertain and further agree that the amount set forth as liquidated damages is a reasonable estimate of the damages to Seller in the event of Buyer's default. Such sum is intended to be liquidated damages, and not a penalty.

(b) If Seller defaults, Buyer may elect to obtain a return of all amounts deposited pursuant to the Bid Procedures Order and this Agreement and net accrued interest, if any, as liquidated damages and this Agreement shall terminate and neither party shall have any rights or obligations pursuant to this Agreement, or in the alternative, Buyer shall have the right to an action for specific performance for Seller's breach of this Agreement, which shall be Buyer's only other remedy. Buyer acknowledges and agrees that under no circumstances shall Seller be liable for Buyer's damages, consequential, actual, punitive, speculative, or otherwise.

ARTICLE 11
MISCELLANEOUS

11.1  Succession and Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties named herein and their respective successors and permitted assigns. No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of the other party.

11.2  Complete Understanding.  This Agreement, along with Bid Procedures Order and any other applicable Order(s) of the Bankruptcy Court entered in the Bankruptcy Case constitute the complete understanding between the Parties. No alteration or modification of any of this Agreement's provisions will be valid unless made in a written instrument which all Parties sign.

Any reference herein to this Agreement shall be deemed to include the schedules and exhibits attached hereto.

11.3   Applicable Law; Jurisdiction.   This Agreement shall be governed by and construed in accordance with the internal laws of the State of Illinois and any applicable provisions of the Bankruptcy Code, without regard to the principles of conflicts of law that would provide for application of another law. The Parties hereto agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement shall be brought exclusively in the Bankruptcy Court, and each of the Parties hereby irrevocably consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the Bankruptcy Court or that any such suit, action or proceeding which is brought in the Bankruptcy Court has been brought in an inconvenient forum.

11.4   Severability.   If a court of competent jurisdiction holds that any one or more of this Agreement's provisions are invalid, illegal or unenforceable in any respect, said court shall enforce said provision to the fullest extent legally permissible and such invalidity, illegality or unenforceability shall not affect any of this Agreement's other provisions, and this Agreement shall be construed as if it had never contained such invalid, illegal or unenforceable provisions. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transaction contemplated hereunder is consummated as originally contemplated to the greatest extent possible.

11.5   Waiver.   A Party's attempted waiver, consent or authorization of any kind, whether required pursuant to the terms of this Agreement or granted pursuant to any breach or default under this Agreement, will not be effective or binding upon such Party unless the same is in a written instrument which such Party has signed. Any such waiver, consent or authorization will be valid solely to the extent specifically set forth in such written instrument. No failure or delay on the part of either Party to this Agreement to exercise any right, remedy, power or privilege shall preclude or limit any other or further exercise of such right or the exercise of any other right, remedy, power or privilege with respect to the same or any other matter.

11.6   Headings.   The descriptive headings in this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

11.7   Execution in Counterparts.   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which together will constitute one and the same instrument.

11.8   Notices.   Any notices required or permitted to be given under this letter of intent shall be deemed to be delivered: (a) when received or delivery is refused by the addresses if delivered by courier service or overnight service; or (b) if sent by email, when transmission is

11

received by the addressee, in each such case addressed or sent to the addresses or email addresses set forth herein below as follows:

| If to Seller, addressed to:<br>Paul M. Bauch, Carolina Y. Sales, and Kenneth A. Michaels Jr.<br>Bauch & Michaels, LLC<br>53 W. Jackson, Suite 1115<br>Chicago, IL 60604<br>pbauch@bauch-michaels.com<br>csales@bauch-michaels.com<br>kmichaels@bauch-michaels.com | with a copy to: |
|---|---|
| If to Buyer, addressed to: | with a copy to: |

Any Party may change the address to which notices hereunder are to be sent to it by giving written notice of such change of address in the manner herein provided for giving notice. Any notice delivered personally shall be deemed to have been given on the date it is so delivered, and any notice delivered by registered or certified mail shall be deemed to have been given on the date it is received or refused, if delivery is refused.

11.9    Construction. The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement. Any reference to any federal, state, local, or foreign statute or law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. The word "including" shall mean including without limitation.

11.10   Time of the Essence. Time is of the essence of this Agreement.

(Signatures on Next Page.)

12

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement of Sale to be duly executed and delivered as of the date first written above.

**Buyer:**                                                                          **Seller:**

_____

                                                                                    _____
                                                                                    George Haldes, Debtor-in-Possession

By: _____
Name: _____
Its: _____

                                                                                    **Seller:**

                                                                                    _____
                                                                                    Sharon Haldes

13